IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,
    Plaintiff,

vs.                    Case No. 08-10061-JTM

SHELLEY HARDING,
    Defendants.

MEMORANDUM AND ORDER

There are three motions before the court in this action against defendant Shelley Harding for medicare fraud in violation of 18 U.S.C. § 1347. In the primary motion before the court, (Dkt. No. 25), Harding seeks either dismissal of the Indictment for reasons of vagueness or insufficiency under Fed.R.Crim.Pr. 7, or for a bill of particulars and to strike surplusage. In addition, Harding has also filed two motions in limine (Dkt. No's 23, 24) seeking the exclusion of statements she made at an administrative hearing, and to exclude references to medicare beneficiaries as victims.

The Indictment here alleges that Harding, who operated A New Beginning, Inc., an alcohol and drug treatment service, submitted (or helped others to submit) 81 fraudulent claims for medicaid reimbursement.

A statute is unconstitutionally vague "'if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits.'" *Ward v. Utah*, 398 F.3d 1239,

1251 (10th Cir.2005) (*quoting Hill v. Colorado*, 530 U.S. 703, 732, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000)). Here, Harding notes that the Indictment challenges claims submitted for children under the age of 12, in the absence of any method for diagnosing or treating substance abuse in children, and claims for persons who were not in fact addicted to any substance. She states that she has not been able to find any "authority specifically criminalizing the provision of such services." (Dkt. No. 25, at 5). She notes that the Indictment does not allege that she violated any "Provider Agreement," and that the forms submitted do not contain any "declaration, acknowledgment or certification that the information is sworn." (Id. at 5).

Harding's arguments are without merit. The gravamen of the offense charged is not that the underlying provision of services was itself illegal or violated any separate agreement, but that the claims for federal reimbursement arising from those services were fraudulent and materially misleading in the nature of the services that had been provided. Nor does 18 U.S.C. § 1347 contain an exception for fraudulent claims which are unsworn.

Harding's vagueness argument, with the exception of an initial, generic statement (*Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)) of the law, otherwise fails to present any authority in support of her argument. Subsequent to Harding's motion, the Tenth Circuit explicitly rejected a similar vagueness claim against § 1347 in *United States v. Franklin-El*, 554 F.3d 903 (10th Cir. 2009). The court wrote:

> Defendant's claim first fails because one "to whose conduct a statute clearly applies may not successfully challenge it for vagueness." [*United States v. LaHue*, 261 F.3d 993, 1005 (10th Cir.2001)] (internal quotation marks omitted). The evidence shows Defendant endeavored through misrepresentations to obtain Medicaid drug and alcohol benefits for non-addicted clients receiving non-covered services. Although the health care fraud statute does not (and could not) specify the innumerable fraud schemes one may devise, a person of ordinary intelligence would

2

understand Defendant's conduct to be the very conduct contemplated by 18 U.S.C. § 1347.

Relying upon *Healthscript, Inc. v. State*, 770 N.E.2d 810 (Ind.2002), Defendant argues that a determination of what the health care fraud statute prohibits would necessitate the incorporation and analysis of numerous regulations, a provider manual, a provider agreement, and various program policies and bulletins. She contends this breadth and complexity undermines fair notice of the illegality of her conduct. In *Healthscript*, the Indiana Supreme Court assessed a state statute criminalizing the knowing or intentional filing of a Medicaid claim in violation of Indiana Code § 12-15. Because the statute cross-referenced a code comprised of 280 sections in 37 different chapters, the court concluded the statute prohibited violating "nothing more specific than this vast expanse of the Indiana Code." *Id.* at 816. Accordingly, the court found the statute provided insufficient notice.

However, unlike the Indiana statute in *Healthscript*, the federal health care fraud statute is not defined through other regulations. Section 1347 is simply a fraud statute, much like the mail fraud and wire fraud statutes (both of which have withstood similar challenges, *see United States v. Stewart*, 872 F.2d 957, 959 (10th Cir.1989)). Moreover, the statute applies to fraud schemes against any health care benefit program, not just Medicaid. The complexity of Medicaid regulations does nothing to alter the straightforward nature of the health care fraud statute or the straightforward allegations of fraud lodged against Defendant.

Moreover, and significantly, the health care fraud statute requires a specific intent to defraud or misrepresent. The constitutionality of an arguably vague statutory standard is closely related to whether that standard incorporates a mens rea requirement. "The presence of a scienter inquiry can save an otherwise vague statute. 'The Supreme Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed.'" *Ward*, 398 F.3d at 1252 (quoting *Murphy v. Matheson*, 742 F.2d 564, 573 (10th Cir.1984) (internal quotation marks omitted)). "Although a specific intent requirement does not necessarily validate a criminal statute against all vagueness challenges, it does eliminate the objection that the statute punishes the accused for an offense of which he was unaware." *Stewart*, 872 F.2d at 959. In light of this, we reject the claim that the health care fraud statute is impermissibly vague.

554 F.3d at 910-11.

Harding's vagueness claims are denied for the reasons identified in *Franklin-El*.

Next, Harding argues for a determination that the Indictment fails to contain "a plain, concise and definite written statement of the essential facts" as required by Rule 7(c)(1), and that it utilizes

the "chart method" supposedly condemned in *United States v. Daniels*, 159 F.Supp.2d 1285, 1297-98 (D.Kan. 2001). In fact, the court in *Daniels* made no general, *per se* condemnation of the use of charts in indictments, and instead merely upheld a request for a bill of particulars *based on the specific indictment chart in question in that case*, which failed to make clear the legal theory advanced against the defendant. *See* 159 F.Supp.2d at 1295 (noting that while the indictment was "lengthy and not laid out in normal fashion," it still "adequately sets forth the grand jury's charges and the essential facts and general circumstances underlying them.")

Here, the Indictment sets out specifically the government's theories of criminal liability, the specific identity of the 81 beneficiaries involved, and the amount of fraudulent funds obtained ($3,758,951). Unlike the indictment in Daniels, the charging instrument here specifically states which theory or theories of criminal responsibility is advanced as to each claimant. An indictment is sufficient if it contains the elements of the offense and informs the defendant of the charges against her, thus showing her to what extent she may plead double jeopardy. *United States v. Radetsky*, 535 F.2d 556, 562 (10th Cir.1976). The indictment need not state the details of evidence upon which the case will rest, *id.* at 565, and is not defective because a more definite and certain statement can be hypothesized. *See United States v. Salazar*, 720 F.2d 1482, 1487 (10th Cir.1983). Generally, it is sufficient for the indictment to track the statutory language. *United States v. Dunn*, 841 F.2d 1026, 1029 (10th Cir.1988).

The Indictment in the present action is sufficient, and no bill of particulars will issue. The defendant fails to articulate what deficiencies exist in the Indictment which might be corrected by a bill of particulars. Such a remedy is extraordinary, and should not be used as a vehicle for discovery. *See Dunn*, 841 F.2d at 1029. The court has read the Indictment and finds that the

instrument provides sufficient information to the defendant to form a defense against the charges against her.

Finally, Harding seeks to strike certain information from the Indictment as surplusage, citing several instances (Dkt. No. 25, at 9) in which she asserts that the allegations in the Indictment are inconsistent or incorrect. A motion to strike language from an indictment should be granted only where the language is "clearly irrelevant to the charges and inflammatory or prejudicial to the defendant." *United States v. Jackson*, 850 F.Supp. 1481, 1506 (D. Kan. 1994).

This is a very high standard, and such motions are strongly disfavored. *United States v. Watt*, 911 F.Supp. 538, 554 (D.D.C. 1995). This is because the truthfulness of any particular factual allegation in an indictment should be decided by the jury rather than the court. Here, all of the challenged language is directly relevant to the charges against Harding, and will not be stricken.

Turning to the motions in limine, Harding seeks to exclude statements she made during the course of an administrative hearing. She argues that such statements are hearsay, not admissible under Fed.R.Evid. 803(8)(C), and that she attended the hearing "as a corporate representative, but was not represented by any counsel individually." (Dkt. No. 24, at 1). The government states that it is unaware of any such statements, but reserves the right to introduce such statements if they are discovered. The court will deny the motion to exclude, since the defendant provides no information as to the circumstances of the hearing or the content of the statements, and no authority for the proposition that her statements as a "corporate representative" are inadmissible in the present prosecution. Such statements are admissible under Rule 801(d)(2). Under that rule, "an out-of-court statement of a defendant made solely in his capacity as a corporate agent is admissible against him

as well as against his corporate principal." *In re Special Fed. Grand Jury Empanelled*, 819 F.2d 56, 59 (3rd Cir. 1987).

Finally, the defendant moves in limine for an order directing the government to refrain from referring to the medicare beneficiaries as "victims." According to Harding, the victims of the (alleged) scheme to defraud were Medicare and the State of Kansas, and the claimants' possible "collateral medical consequences" is irrelevant to the charges against her. The government states that it does not intend to refer to the claimants as "victims" or to introduce evidence of *physical* harm to any of the claimants, but submits that it should be permitted to argue as evidence of wrongful intent the fact that the defendant has failed to show remorse over the real and significant economic and social burdens created by designating numerous children as "addicts." (Dkt. No. 26, at 2).

Given the preliminary nature of the case and the restricted relief sought – which seeks exclusion of the term "victims" or evidence of adverse "medical consequences" – the court will grant the defendant's motion. The defendant's motion does not request relief which would exclude the argument proposed by the government; the scope of any permissible argument may be addressed by motion after the conclusion of the evidence.

IT IS ACCORDINGLY ORDERED this 13th day of April, 2009, that the defendant's Motion to Dismiss and for Other Relief, and Motion to Exclude Statements (Dkt. No's 24, 25) are denied; her Motion to Exclude Characterization as Victims (Dkt. No. 23) is granted.

s/ J. Thomas Marten  
J. THOMAS MARTEN, JUDGE